## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| AARON DANIEL PEACOCK, | ) | CASE NO. 1:20-cv-01459 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Comm'r of Soc. Sec.,* | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Aaron Daniel Peacock (Plaintiff), challenges the final decision of Defendant

Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner), denying his

application for Child Disability Benefits (CDB).[1]  This court has jurisdiction pursuant to 42

U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to

consent of the parties. (R. 12). For the reasons set forth below, the Commissioner's final decision

is AFFIRMED.

### I. Procedural History

On July 31, 2017, Plaintiff filed his application for CDB, alleging a disability onset date of

1982. (R. 11, Transcript (Tr.) 135).[2]  The application was denied initially and upon

---

[1]  Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party."
Fed.R.Civ.P. 25(d).

[2]  Previously, Plaintiff had filed a claim for Supplemental Security Income (SSI) on August 21,
2012. (Tr. 60). On July 16, 2014, an Administrative Law Judge (ALJ) determined Plaintiff was
disabled as of August 21, 2012—the date his SSI application was filed. (Tr. 65).

reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 57-87). Plaintiff participated in the hearing on June 12, 2019, was represented by counsel, and testified. (Tr. 29-49). According to the ALJ, the period under consideration was 2000 through 2004, the time period between Plaintiff's 18th and 22nd birthdays.[3] (Tr. 33). A vocational expert (VE) also participated and testified. *Id.* On June 28, 2019, the ALJ found Plaintiff not disabled. (Tr. 23). On May 5, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 15, 17 & 18).

Plaintiff asserts the following assignments of error: (1) the ALJ erred by failing to find Plaintiff was disabled where an earlier application for SSI was approved with an onset date of August 21, 2012; and (2) the ALJ failed to meet his burden at Step Five of the sequential evaluation. (R. 15).

## II. Evidence

### A. Relevant Evidence[4]

#### 1. Treatment, Vocational, and Educational Records

During the 1991-1992 school year, Plaintiff had an Individualized Education Program (IEP) to improve his communication, comprehension, and expressive language skills. (Tr. 231). Testing on April 24, 1991, indicated that Plaintiff scored in the average range in reading and

---

[3] Neither Plaintiff's brief nor his reply challenge that the only time period at issue is between 2000 to 2004. (R. 15 & 18).

[4] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

spelling, with depressed math skills and written language scores, and great difficulty understanding nuances or subtleties. (Tr. 235). At that time, he had a verbal IQ of 59, performance IQ of 90, and full-scale IQ of 72 (Tr. 235, 334). Plaintiff had "significant weaknesses in the areas of interpersonal relationships, especially with peers." (Tr. 240).

Between April and June of 1993, Plaintiff, then age ten, underwent a neuropsychological evaluation. (Tr. 400-410). Intelligence testing revealed a full scale IQ of 80 with verbal scores in the borderline range. (Tr. 403). Christine Barry, Ph.D., opined that Plaintiff's combination of social, language, and executive difficulties was "suggestive of a pervasive developmental disorder known as Asperger's Syndrome." (Tr. 405).

On May 26, 1994, Plaintiff underwent another neuropsychological evaluation by Dr. Barry. (Tr. 398-399). Plaintiff had a full scale IQ score of 86, falling in the upper end of the low average range. (Tr. 398). It was noted that Plaintiff had been referred to a pediatric neurologist after the earlier evaluation and prescribed Prozac. *Id*.

Plaintiff attended St. Vincent-St. Mary High School from 1997 to 2001, graduating with a 2.204 GPA and ranked 96 out of 111 graduating students. (Tr. 154).

Plaintiff attended Cuyahoga Community College starting in 2001, and completed an Associate's Degree in 2014. (Tr. 172). While attending Cuyahoga Community College, Plaintiff was approved for extra time for exams and quizzes, and the use of a basic calculator for exams requiring math computations. (Tr. 213).

In May of 2012, Plaintiff was referred by vocational rehabilitation for a psychological evaluation and report conducted by Eve Whitmore, Ph.D. (Tr. 452-455). Dr. Whitmore diagnosed Plaintiff with Asperger's Syndrome and obsessive-compulsive personality disorder, and borderline intellectual functioning based on intelligence testing. (Tr. 455). With respect to

vocational projections, Dr. Whitmore opined that Plaintiff would benefit from basic skills training, and would have a better chance of success with low stress, consistent hours, part time hours to begin with, and close supervision. (Tr. 454).

On September 12, 2012, a Vocational Evaluation Report indicated that Plaintiff was currently ready for competitive, full-time employment. (Tr. 458). It was opined that Plaintiff's Asperger's Syndrome and Obsessive Compulsive Personality Disorder would "certainly impact the kinds of jobs that he may be able to perform, but may not be severe enough at this time to impede a return to the workplace." (Tr. 460). Plaintiff seemed to have "minimal awareness of the realities and demands of the workplace [and] [m]ay benefit from a period of work adjustment." (Tr. 461). Distractibility and inattentive behaviors were noted as a significant problem. (Tr. 466).

In February of 2015, Plaintiff worked with the Ohio Rehabilitation Services Commission. (Tr. 413-419). After completing a 20-hour work attempt over the course of five days at a discount grocery store, it was determined that his strengths were attendance, punctuality, grooming and hygiene. (Tr. 418). He was rated below average with work speed, focus, basic problem solving, and work ethic. *Id*. "Besides work speed, his biggest concern is his desire to work.… Verbally he does not want to work a job like this or many others." (Tr. 419). The report concluded that "[i]f Aaron is truly motivated to work, he would be best suited for a part time position with specific job tasks that do not require problem solving skills." *Id*.

On July 31, 2017, it was noted in a Report of Contact that all of Plaintiff's past employment was subsidized through the Bureau of Vocational Rehabilitation (BVR) and disability programs. (Tr. 179).

**2.  Medical Opinions Concerning Plaintiff's Functional Limitations**

Approximately thirteen years after the conclusion of the time period under consideration,

Plaintiff attended a consultative psychological examination on October 11, 2017, performed by

Sudhir Dubey, Psy.D. (Tr. 642-648). Plaintiff reported feeling okay about himself, good sleep,

no thoughts of suicide or hurting himself, no symptoms of mania, no anxiety, no panic, no

delusions, no hallucinations, and no PTSD. (Tr. 643). On a daily basis, Plaintiff reported being

able to engage in self-care, manage money, care for pets, manage a daily schedule, keep

appointments, drive, work, and complete paperwork. (Tr. 644). Dr. Dubey observed that

Plaintiff's appearance and behavior were unremarkable, as were Plaintiff's flow of conversation,

thought processes, and comprehension. (Tr. 645). Plaintiff reported no problems with

concentration or memory. *Id*. Based on mental status examination, Dr. Dubey concluded

Plaintiff's level of cognitive functioning was in the low average range. *Id*. Dr. Dubey diagnosed

autism spectrum disorder, level 1. (Tr. 646). Dr. Dubey opined that Plaintiff would be able to

understand, remember, and carry out both simple and multi-step instructions. (Tr. 646-647).

However, Dr. Dubey also opined that Plaintiff would "not be able to maintain persistence and

pace to remember and carry out multi-step instructions independently," but could perform such

tasks with supervision. (Tr. 647). Although noting that Plaintiff was stable and calm, had no

reported issues dealing with supervisors or co-workers in the past, and no history of legal

problems, Dr. Dubey believed Plaintiff will have "some issues dealing with co-workers and

supervisors … related to possible problems stemming from cognitive issues leading to associated

frustration …." *Id*. Also due to cognitive issues and frustration, Dr. Dubey surmised Plaintiff will

have some issues dealing with work pressure. (Tr. 648).

On October 24, 2017, State Agency psychologist Courtney Zeune, Psy.D., completed a

Psychiatric Review Technique form limiting her assessment to the relevant time period of 2000

to 2004. (Tr. 651). Dr. Zeune indicated that the categories upon which the medical disposition is

based was autism spectrum disorders. (Tr. 651). She concluded "[r]ecords during relevant time period are insufficient at this time." (Tr. 665).

On December 27, 2017, State Agency psychologist Robyn Murry-Hoffman, Ph.D., also completed a Psychiatric Review Technique form limiting her assessment to the relevant time period of 2000 to 2004. (Tr. 669). She found insufficient evidence of limitations in all four domains of mental functioning. (Tr. 681).

**B. Relevant Hearing Testimony**

At the June 12, 2019 hearing, the ALJ posed the following hypothetical question to the VE:

> Now the hypothetical number one would be able to perform work at all exertional levels but would have the following no exertional limitations. Could perform simple, routine and repetitive tasks but would not be able to perform tasks at a production rate pace such as assembly line work. Could make only simple work related decisions and should not be responsible for the safety or welfare of others. Now he could interact on a frequent basis with supervisors but only on an occasional basis with a small group of familiar coworkers, with no more than incidental interaction with the general public. Now he should be limited to superficial contact and by that I mean no sales, arbitration, negotiation, conflict resolution or confrontation. No group tandem or collaborative tasks, no management, direction or persuasion of others and now lastly he could respond appropriately to only occasional change in a routine work setting and any such changes would need to be easily explained and/or demonstrated to him in advance of gradual implementation.

(Tr. 44-45). The VE testified that such an individual could perform a significant number of jobs in the national economy and gave the following examples: laundry worker II, Dictionary of Occupational Titles (DOT) 361.685-018 (100,000 jobs nationally); cafeteria attendant, DOT number 311.677-010 (200,000 jobs nationally); and, cleaner II, DOT 919.687-014 (100,000 jobs nationally). (Tr. 45).

The ALJ proceeded to pose the following second hypothetical question:

> [O]nce again we are talking about somebody with non exertional limitations only. Now this individual could understand and remember and follow simple directions

and essentially static work setting in which any changes to work setting were explained in advance. The individual could tolerate no strict time pressures or production quotas, performing work that involved only superficial contact with the general public and coworkers and I am going to use the same definition as superficial we used for the first hypothetical. But there would need to be close supervision by a supervisor ….

(Tr. 46)

The VE testified that there were no unskilled jobs in the national economy for someone with the limitations as set forth in the second hypothetical who also required "close supervision." (Tr. 47). The VE noted his testimony was not based on the Dictionary of Occupational Titles, which does not address supervision. *Id*.

Finally, the VE testified that an individual who was off-task fifteen percent or more of the time was unemployable, as was an individual who would be absent more than one day per month. (Tr. 47).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at

the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1.  Born on ***, 1982, the claimant had not attained age 22 as of ***, 1982, the alleged onset date (20 CFR 404.102 and 404.350(a)(5)).

2.  The claimant has not engaged in substantial gainful activity since ***, 1982, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.  Prior to attaining age 22, the claimant had the following severe impairment: Asperger's Syndrome; and Autism. (20 CFR 404.1520(c)).

4.  Prior to attaining age 22, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, I find that, prior to attaining age 22, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform simple, routine and repetitive tasks, but cannot perform tasks at a production rate pace such as assembly line work. The claimant can make only simple work-related decisions, and should not be responsible for the safety or welfare of others. The claimant can interact on a frequent basis with supervisors, but only on an occasional basis with a small group of familiar coworkers, and with no more than incidental interaction with the general public, and should be limited to superficial contact meaning no sales, arbitration, negotiation, conflict resolution or confrontation, no group, tandem or collaborative tasks, and no management, direction or persuasion of others. The claimant can respond appropriately to occasional change in a routine work setting, as long as any such changes are easily explained and/or demonstrated in advance to gradual implementation.

6.      The claimant has no past relevant work (20 CFR 404.1565).

7.      The claimant was born on ***, 1982 and was 0 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

10.     Prior to attaining age 22, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, at any time prior to ***, 2004, the date he attained age 22 (20 CFR 404.350(a)(5) and 404.1520(g)).

(Tr. 18-19, 21, 22).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.  Plaintiff's Assignments of Error

#### 1. Impact of the Decision Dated July 16, 2014, on the Current Application

As indicated above, Plaintiff previously filed a claim for SSI on August 21, 2012, which resulted in a determination that Plaintiff was disabled as of the date of his SSI application. (Tr. 65). It is undisputed that the current application is for Child Disability Benefits (CDB) spanning the years 2000 to 2004 between Plaintiff's 18th and 22nd birthdays. (R. 15, PageID# 775).

As this court understands Plaintiff's argument, he believes Acquiescence Ruling 98-4(6), based on the Sixth Circuit's decision in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (1997), either compelled a finding of disability or a presumption of disability with respect to his current application despite the minimum eight-year gap between the time periods at issue and the differing standards for SSI and CDB claims. (R. 15, PageID# 775-781; R. 18, PageID# 807-809).

One district court in this circuit has succinctly summarized *res judicata* in the social security context as follows:

> As an initial matter, I will address the issue of res judicata and the effect of the Sixth Circuit decision's in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018).
>
> About twenty years ago, the Sixth Circuit held that the "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (1997). The Social Security Administration then issued an Acquiescence Ruling on *Drummond*:
>
>> When adjudicating a subsequent disability claim with an adjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim ... unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.
>
> [AR] 98-4(6), 1998 WL 283902 (June 1, 1998).
>
> Recently, however, the Sixth Circuit clarified the meaning of *Drummond*. In *Earley*, a Social Security Administration ALJ had thought *Drummond* precluded him from revisiting an earlier finding that the claimant was not disabled unless she offered new and material evidence of a changed condition. *Earley*, 893 F.3d at 931. But "[t]hat is not how it works." *Id*. at 932. Rather, the Sixth Circuit explained, "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory condition." *Id*.

*Colbert o/b/o JVR v. Comm'r of Soc. Sec.*, No. 2:18-CV-11050, 2019 WL 3315734, at *10 (E.D.

*Mich.* Mar. 27, 2019), *report and recommendation adopted*, 2019 WL 2559803 (E.D. Mich. June 21, 2019).

Plaintiff, relying on the language of the AR 98-4(6), asserts that "[i]n this matter there was no new and material evidence as the relevant time period was for a period of time prior to the award of benefits." (R. 15, PageID# 776). Plaintiff concludes that "[f]ailure to adopt the finding by ALJ Griffith that Plaintiff needed additional supervision was harmful and reversible error." *Id.* The court is unaware of any decision in the social security context that has applied *res judicata* in a factually similar circumstance.

Typically, the *res judicata* issue arises when a claimant has an application either approved or disapproved and a subsequent claim is filed for a new time period *subsequent* to the earlier decision. Even in typical cases, courts in this district have generally observed that "[t]he *Earley* court held that *res judicata* does **not** apply to a prior ALJ's findings **when a different time-period is at issue**, and that therefore, the **prior findings are not binding**." *See, e.g., Al Jalham v. Comm'r of Soc. Sec.*, No. 18-12595, 2019 WL 7584406, at *4 (E.D. Mich. Aug. 26, 2019) (bold added), *report and recommendation adopted* 2019 WL 5558357 (E.D. Mich. Oct. 29, 2019); *see also Forman v. Saul*, No. 7:19-CV-043-CHB, 2020 WL 5521038, at *5 (E.D. Ky. Sept. 14, 2020) ("res judicata does not apply to a new application for SSI benefits for a new period of time; rather, the new application is entitled to a "fresh review.") (*citing Earley*, 893 F.3d at 933-34); *Snead v. Saul*, No. 1:19CV2754, 2020 WL 5097580, at *11 (N.D. Ohio Aug. 10, 2020) (In *Earley*, the Sixth Circuit clarified *res judicata* applies to subsequent applications for 'the same period of time [ ] rejected by the first application.'"), *report and recommendation adopted*, 2020 WL 5096066 (N.D. Ohio Aug. 28, 2020); *Neupane v. Comm'r of Soc. Sec.*, No. 2:20-CV-2306, 2021 WL 3489676, at *6 (S.D. Ohio Aug. 9, 2021) ("res judicata does not apply

to a new application for SSI benefits for a new period of time.")[5]

Plaintiff cites no authority to support such a novel application of *Drummond*, *Earley*, or AR 98-4(6). Ultimately, Plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). As explained by a recent decision of this court, the *Earley* decision "made two things clear—satisfying a new regulatory threshold is a changed circumstance justifying departure from a prior ALJ's ruling, and because 'human health is rarely static', evidence accompanying a new application for a new time period receives a fresh look." *Lewis v. Comm'r of Soc. Sec.*, No. 3:19 CV 2893, 2021 WL 981238, at *4 (N.D. Ohio Mar. 16, 2021) (finding that the claimant's "present claim" was that he was "disabled when he filed his application in 2016, an issue the ALJ in 2011 could never have reached.")

Here, the ALJ expressly and reasonably relied on the State Agency physicians who determined that there was "insufficient evidence to support a child disability benefits claim for the time period considered." (Tr. 21). In fact, State Agency psychologist Dr. Murry-Hoffman

---

[5] Defendant cites a factually somewhat similar case from the Eastern District of California. (R. 17, PageID# 796, citing *Reding v. Astrue*, 2010 WL 4687747 (E.D. Calif. Nov. 10, 2010)). In that case, as here, the plaintiff had an SSI application approved with disability beginning on March 12, 2004. *Id*. Thereafter, the claimant filed a subsequent application for CDB alleging she was disabled before her 22nd birthday in 2003 which was approximately six to seven months before the date she was deemed disabled. *Id*. Consistent with the cases cited by the court from within this circuit, the *Reding* decision found "the two applications pertain to different time periods and therefore different facts apply. Consequently, *res judicata* does not apply. *Id*. at *3. Nevertheless, the *Reding* court found that the ALJ erred because substantial evidence did not show that the claimant's condition worsened in the six to seventh month interim, but rather remained relatively static or at most only a slow increase in the intensity of the claimant's headaches. *Id*. at **6-7. Plaintiff's reply asserts the same result should occur here. (R. 18, PageID# 807). Plaintiff, however, ignores two significant differences: (1) the dearth of evidence in this case concerning the relevant time period; and (2) the eight to twelve year gap between the relevant time period and the onset of his SSI disability.

expressly addressed the same argument Plaintiff's counsel now raises:

> The attorney notes on the 3441 remarks:
> Mr. Peacock was diagnosed with Autism while in elementary school. As a result of his condition, accommodations were provided throughout school and into college. During college, he typically took one or two courses per semester and assistance was provided. Additionally, course substitutions were made as needed. Based upon his condition, he filed for SSI which was granted via ALJ Decision dated 07/16/14 with a start date of 08/21/12 when the application was filed. Since the autism spectrum disorders are developmental, it is not a condition that waxes and wanes. It was diagnosed well before age 18 and remains today. As he has already been found disabled under the adult rules, he would have been disabled between the ages of 18-22.
>
> There are no records in file from 9/2000 to 9/2004 time frame. While autism is indeed a developmental d/o, it is also a neurodevelopmental d/o. But it is not a degenerative d/o, so learning and compensaiton [sic] can occur throughout the lifespan. Title II CDBR [Child Disability] claim is still insufficient as there is [insufficient evidence] to assess how the clt functioned during the CDBR period. The ALJ decision was for a [Title XVI] period.

(Tr. 683).

Plaintiff's argument is premised on his own lay interpretation of the evidence and the assumption that his condition remained static from childhood until a time period approaching his thirtieth birthday. The ALJ was not unreasonable in according persuasive weight to the opinion of a medical professional.

Finally, Plaintiff argues it was error for the ALJ to rely on the State Agency opinions over the opinion of Dr. Dubey, concluding the decision lacks a coherent explanation. (R. 15, PageID# 780). At the outset, the court notes that Plaintiff's application for benefits was filed on July 31, 2017, several months *after* the Social Security Administration's new rules went into effect concerning the weighing of medical opinions and prior administrative medical findings.[6] *See* 20

---

[6] "Prior administrative findings" refers to the findings of the State Agency physicians or psychologists. 20 C.F.R. § 404.1513(a)(1)(5). While the new regulations differentiate between "medical opinions" and "prior administrative medical findings," the regulations do not ascribe

C.F.R. §§ 404.1520c & 416.920c. The new regulations eliminated any hierarchical consideration of medical opinions, including the elimination of the treating physician rule. *See, e.g., Kinney v. Comm'r of Soc. Sec.*, No. 5:20-CV-1155, 2021 WL 3854828, at *4 (N.D. Ohio Aug. 30, 2021) (concluding a report and recommendation "accurately reflected the fact that the hierarchical deference previously afforded the medical opinion of a treating physician had been eliminated") (Lioi, J); *Bovenzi v. Saul*, No. 1:20-cv-185, 2021 WL 1206466 at *3 (N.D. Ohio Mar. 31, 2021) ("Under the new regulations applicable to claims filed on or after March 27, 2017, the opinions of [a treating medical source] are not entitled to any specific evidentiary weight.") (Pearson, J.).

Pursuant to the regulations in effect, 20 C.F.R. §§ 404.1520c(a) & 416.920c(a), an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." Notably, even under the old regulations, the opinion of Dr. Dubey would not have constituted treating source opinions, as it is undisputed that he only conducted one consultative examination thirteen years after the relevant time period ended. Nevertheless, the court agrees that the ALJ must still "articulate in [the] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in your case record." 20 C.F.R. §§ 404.1520c(b) & 416.920c(b). The ALJ addressed Dr. Dubey's opinion as follows:

> I do not find persuasive the opinion of Sudhir Dubey, Psy.D (B6F) because, although he is an acceptable medical source whom had the opportunity to examine the claimant, he did not have the benefit of a treating relationship with the claimant. Further, Dr. Dubey's examination was over a decade after the herein considered time period and therefore too remote to be persuasive.

---

greater significance to either, and both and are evaluated utilizing the same factors. 20 C.F.R. §§ 404.1520c & 416.920c.

(Tr. 21).

Under the revised regulations, medical opinions, as well as prior administrative findings, are evaluated using the factors listed in 20 C.F.R. §§ 404.1520c(c) & 416.920c(c). The factors include: supportability; consistency; relationship with the claimant; length of treatment; frequency of examination; purpose and extent of treatment; examining relationship; specialization; and "other factors." *Id*. The regulations explain that "supportability" and "consistency" are the "most important factors," and that an ALJ may, but is not required to, discuss how he or she considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2) & 416.920c(b)(2).

When considering an opinion's supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1). Here, reading the ALJ's decision as a whole, the ALJ was troubled by the lack of any meaningful evidence from the relevant time period thus concluding that Dr. Dubey's assessment—rendered so far in the future from the relevant time period—was not supported by the objective evidence of record.

The court concludes that the ALJ sufficiently articulated the weight ascribed to Dr. Dubey's opinion. Plaintiff clearly disagrees that an opinion rendered thirteen years after the relevant time period *and* that makes no attempt to limit its confines to the earlier time period can be rejected on that basis. However, Plaintiff cites no authority in support of his conclusion that such a

16

determination is not a "defensible proposition." (R. 15, PageID# 780).[7]

### 2. Burden at Step Five

In the second assignment of error, Plaintiff asserts the ALJ "disregarded the fact that the prior ALJ, neuropsychological testing, and vocational rehabilitation records all documented the fact that Plaintiff needed additional supervision in order to complete any work activity." (R. 15, PageID# 781, *citing* Tr. 62-65, 400-410, 398-399, 452-455, 461-462). Therefore, Plaintiff argues, the ALJ's finding at Step Five of the sequential evaluation was not supported by substantial evidence. *Id*. at PageID# 781-782. Further, Plaintiff asserts the ALJ's failure to find that "close supervision" was required was not harmless, because the VE testified that such an individual was not competitively employable. *Id*.

At the fifth and final step of the disability analysis, if a claimant cannot perform his past relevant work, the ALJ must determine whether the claimant can adjust to other work in light of the claimant's RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this final step, the burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 391 (6th Cir. 1999); *accord*

---

[7] Plaintiff's brief notes that "Dr. Dubey opined that Plaintiff would not be able to maintain persistence and pace to remember and carry out multi-step instructions independently but could perform these tasks with supervision, he would have some issues dealing with coworkers and supervisors and would have some issues dealing with work pressure." (R. 15, PageID# 778-780). The ALJ's ultimate RFC limited Plaintiff to, among other limitations, "simple, routine" work, and several limitations on the quantity and character of Plaintiff's interaction with others. (Tr. 19). In addition, Plaintiff was limited to superficial contact and only occasional changes that were easily explained. *Id*. Plaintiff's brief makes no meaningful attempt to explain why he believes the RFC does not sufficiently account for these limitations, especially in light of the rather vague and imprecise language employed by Dr. Dubey that Plaintiff would have "some issues" in these areas.

*White v. Comm'r of Soc. Sec.*, 312 Fed. App'x 779 (6th Cir. 2009). An ALJ's finding that a claimant can perform a significant number of jobs must be supported by substantial evidence (*i.e.* that the claimant has the vocational qualifications to perform specific jobs). *Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 799 (6th Cir. 2004) (*citing Varley v. Sec'y of Health & Varley*, 820 F.2d 777, 779 (6th Cir. 1987)).

Testimony from a vocational expert—in response to a hypothetical question—may constitute such substantial evidence, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

The Commissioner counters that the Step Five determination was supported by substantial evidence, as the ALJ submitted a hypothetical questioning that mirrored the ultimate RFC found in this case, and that the VE unequivocally testified that such an individual could perform a substantial number of jobs in the national economy. (R. 17, PageID# 802). The Commissioner is correct. At the hearing, the ALJ posed a hypothetical question to the VE that included all the limitations contained in what would become the RFC of the decision. (Tr. 19, 44-45). The VE indeed testified that such an individual could perform a significant number of jobs. *Id*. Therefore,

the ALJ's Step Five finding was supported by substantial evidence in the form of the VE's testimony.

The court agrees that Plaintiff's Step Five argument is actually an attack on the RFC determination itself. A claimant's RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a). The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c). Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, ***the claimant's RFC***, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

Plaintiff's brief does little more than cite portions of the record that he believes could have supported a different finding. This court's role in considering a social security appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017). "When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case *de novo*, resolve conflicts in evidence, or *decide questions of credibility*." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (*quoting Bass v. McMahon*, 499

F.3d 506, 509 (6th Cir. 2007)). To find that a requirement for close supervision was necessary would require this court to reweigh the evidence and ascribe great weight to certain opinions from far outside the relevant time period. The court declines to do so.

In addition, assuming for the sake of argument only that the court could arrive at its own RFC determination, the evidence cited by Plaintiff in connection with his second assignment of error does not compel the inclusion of "close supervision" restriction. His brief cites the following in connection with this argument: (1) the ALJ's RFC determination from his approved SSI application (Tr. 62-65);[8] unexplained citation to the two neuropsychological evaluations performed by Dr. Barry in 1993 and 1994 (Tr. 398-410); Dr. Whitmore's opinion from May of 2012 that Plaintiff "would have a better chance of success in a job … under close supervision" (Tr. 454); and an unexplained citation to a vocational evaluation report from September of 2012. (Tr. 461-462). All of these pieces of evidence either predate or post-date the relevant time-period of 2000 through 2004 by many years. The court cannot find any error in the ALJ's decision to exclude limitations that did not necessarily exist during the relevant time period.

Further, with respect to Dr. Whitmore's statement that Plaintiff "would have a better chance of success in a job … under close supervision," courts have held that "[o]ptimal conditions, however, are not necessary ones. The RFC 'is the most you can still do despite your limitations.'" *See, e.g., Jakubiak v. Berryhill*, 337 F. Supp. 3d 80, 85–86 (D. Mass. 2018) (*citing* 20 C.F.R. 416.945(a)(1)); *see also Gonzales v. Colvin*, 213 F. Supp. 3d 1326, 1331 (D. Colo. 2016) ("Identifying the optimal work environment for a claimant does not mean that his RFC is

---

[8] The court finds any argument with respect to the findings by the other ALJ concerning a different application from a different time period to be redundant of Plaintiff's first assignment of error, which, for the reasons stated above, is without merit.

limited to that work setting alone."). The ALJ was not required to construe Dr. Whitmore's statements concerning the optimal or best-suited working conditions for Plaintiff as absolute limitations without which the Plaintiff could not successfully work. In other words, the RFC need only include those necessary conditions for Plaintiff to work—not Plaintiff's ideal or optimal work environment that would give him the greatest chance for success. As a result, the court finds no error in the ALJ's failure to explain why Dr. Whitmore's optimal working conditions opinion, authored eight to twelve years after the relevant time period, were not included in the RFC.

Plaintiff's second assignment of error is without merit.

## IV. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: September 30, 2021